**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC NEUROSURGICAL SPECIALISTS, PA, on behalf of PATIENT CB,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY, and MERCK MEDICAL, DENTAL, LIFE INSURANCE AND LONG TERM DISABILITY PLAN,<br><br>Defendants. | Case No. |

## **COMPLAINT**

By way of this Complaint, Plaintiff Atlantic Neurosurgical Specialists, PA, on behalf of Patient CB ("Atlantic Neurosurgical" or "Plaintiff") brings this action against Aetna Life Insurance Company ("Aetna") and Merck Medical, Dental, Life Insurance and Long Term Disability Plan ("Plan Defendant") (together "Defendants").

1. This is an action concerning Defendants' under-reimbursement of Atlantic Neurosurgical for specialized spinal surgery procedures.

2. Aetna was the claims administrator of the Plan Defendant, an ERISA plan under which Atlantic Neurosurgical's patient, CB, was a plan participant.

3. Atlantic Neurosurgical was an out-of-network provider, meaning that its surgeon, David Wells-Roth, M.D., did not participate in Aetna's network.

4. Patient CB was diagnosed with a herniated disc at the C5-C6 region. On March 23, 2017, Dr. Wells-Roth performed a discectomy with the placement of an artificial disk.

1

5. Patient CB experienced new pain and weakness and, on January 18, 2018, after finding a large herniated disc, Dr. Wells-Roth performed a discectomy at the C6-C7 region with the placement of an artificial disk.

6. After these surgeries, Plaintiff submitted invoices in the form of CMS-1500 forms as required to Defendant for a total amount of $98,900.00. Defendant reimbursed Plaintiff only $29,736.84 leaving an unreimbursed amount of $69,163.16 for which Patient CB remains liable.

## JURISDICTION

7. The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

8. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over them.

9. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Aetna resides, is found, has an agent, and transacts business in the District of New Jersey, and (b) Aetna conducts a substantial amount of business in the District of New Jersey, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the District of New Jersey; and (c) the Plan Defendant transacts business in the District of New Jersey by insuring individuals in the State (including the Patient) who are plan participants and beneficiaries of its Plan.

10. Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where the participant resides or where the participant alleges that the violation of ERISA occurred. Plaintiff alleges that Defendant violated ERISA within the District of New Jersey.

## PARTIES

11. Plaintiff Atlantic Neurosurgical Specialists, PA, is a surgical practice group. David Wells-Roth, M.D. attended medical school at the George Washington University School of Medicine and completed his neurosurgical residency at Weill-Cornell Medical Center. He completed fellowships in interventional neuroradiology and skull base neurovascular surgery. He is board certified in neurosurgery. Plaintiff's principal place of business is in Morristown, New Jersey.

12. Defendant Aetna Life Insurance Company is a health care insurance company. Its principal office is in Hartford, Connecticut.

13. Plan Defendant Merck Medical, Dental, Life Insurance and Long Term Disability Plan is a self-funded ERISA Plan, meaning that it pays the healthcare liabilities for its plan participants and beneficiaries itself. Its principal place of business is Kenilworth, New Jersey.

## FACTUAL ALLEGATIONS

14. After performing the complex spinal surgery on March 23, 2017, and after requesting and receiving prior authorization, Plaintiff submitted an invoice on a CMS-1500 form as Aetna required. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 22856 | $43,000.00 | $14,595.00 |
| **Total** | **$43,000.00** | **$14,595.00** |

CPT code 22856 is total disc arthroplasty (meaning an artificial disc), anterior approach, including discectomy.

15. Of the total billed amount of $43,000.00, Defendant paid $14,595.00, leaving an unpaid amount of $28,405.00, which was the financial responsibility of the Patient.

16.     After performing the complex spinal surgery on January 18, 2018, and after requesting and receiving prior authorization, Plaintiff submitted an invoice on a CMS-1500 form as Aetna required.  The billed amounts, paid amounts, and CPT codes were as follows:

| **CPT** | **Billed Amount** | **Paid Amount** |
|---|---|---|
| 22856 | $55,900.00 | $15,141.84 |
| **Total** | **$55,900.00** | **$15,141.84** |

17.     Of the total billed amount of $55,900.00, Defendant paid $15,141.84, leaving an unpaid amount of $40,758.16, which was the financial responsibility of the Patient.

18.     Aetna under-reimbursed Plaintiff based on what it termed the "recognized charges," and represented in its Explanation of Benefits ("EOB") that "[t]he charge for this service exceeds that amount."

19.      There is no such term as the "recognized charge" in the Plan.  The terms of the Plan require reimbursement of inpatient surgery performed by an out-of-network provider based on the "Reasonable and Customary" amount, which is defined in the Plan to include (a) the complexity of the service, (b) the range of services provided,  and (c) the geographic area where the provider is located.

20.     The term "reasonable and customary," or "R&C" as it is commonly abbreviated, is defined as both the normal amount that a provider charges, tested by its reasonableness in the marketplace. R&C may be measured in several ways, including by surveying the provider's geographical area (not a "geozip," which is an artificial aggregation of individual zip codes that have no relation to the provider's geographical market area) for the same type of provider with the same qualifications, education, board certifications and fellowships, hospital admitting privileges (if a surgeon), patient availability, and other components.  For example, if there is no other spinal

surgeon in the provider's geographical area meeting these criteria, the provider's billed amount is reasonable and customary, by definition.

21. Aetna did not reimburse Plaintiff according to the unambiguous terms of the Plan, which required reimbursement of the reasonable and customary amount. By failing to follow the terms of the Plan, and breaching those terms, Aetna violated ERISA.

22. Plaintiff filed two levels of appeals for both surgeries. Although for the March 23, 2017, appeal Aetna initially indicated that the appeal was untimely and refused to consider it, in a subsequent letter dated December 27, 2019, Aetna conceded that all of the appeals were timely.

23. Because Aetna had refused to consider Plaintiff's timely appeals, they are considered to be exhausted based on futility.

24. Further, for the January 18, 2018, appeals, Aetna indicated in a letter dated April 11, 2018, that Plaintiff's appeal had reached its final level and therefore was exhausted. Aetna upheld its determination, stating, contrary to its representation in its EOBs, that it had based its reimbursement on the reasonable and customary charge:

> In order to determine the reasonable and customary charges, we refer to statistical profiles of physicians' charges for the same or similar services in a geographical area. The portion of your claim that exceeds what we have determined to be the reasonable and customary charge is not eligible for reimbursement.

25. None of this is permitted by the terms of the Plan. The Plan requires analysis of (a) the complexity of the service, (b) the range of services provided, and (c) the geographic area where the provider is located to determine the reasonable and customary amount.

26. Contrary to the terms of the Plan, Aetna stated that it based the reimbursement of Plaintiff on "statistical profiles of physicians' charges." This means Aetna used an undisclosed database with undisclosed statistics to manipulate the billed amounts. It said it based the reimbursement on "the same or similar services." The terms of the Plan specifically point to "the

service" or "services" of the provider, not "the same or similar services" of other providers. Aetna said it based its reimbursement "in *a* geographical area." This is directly contrary to the terms of the Plan, which require that reasonable and customary reimbursement be calculated based on "the geographic area where the provider is located."

27. In-patient surgery is a covered service under the terms of the Plan.

28. Prior to performing both surgeries, Plaintiff obtained pre-authorizations from Aetna, which authorized the surgeries as medically necessary.

29. When Defendants denied Plaintiff's claims, they did not do so pursuant to the rules promulgated under ERISA.

29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or

other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

30. Defendants did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

31. Defendants did not provide (a) the "statistical profiles of physicians' charges," (b) which geographical area they used to determine the reasonable and customary amount, and (c) the database they used to determine the statistical profiles of physicians' charges.

32. Under ERISA, when an insurer, claims administrator, and plan fail to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted her administrative remedies.

33. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

34. By failing to reimburse Plaintiff in accordance with the terms of the Plan, Defendant violated ERISA, 29 C.F.R. § 2560.503-1(g).

35. Defendants also violated ERISA when they failed to disclose the basis of their reasonable and customary amount methodology so that Plaintiff could meaningfully appeal it. Because it is therefore unlikely that the components of this methodology are contained in the administrative record, the record is expected to be incomplete and inadequate.

36. Although as a self-funded plan the Plan Defendant is liable for plan benefits, Aetna is also self-interested. Under its Administrative Services Agreement with the Plan Defendant, it is a claim fiduciary, responsible for final claim determination, and "the legal defense of disputed

7

benefit payments." Aetna placed a percentage of its fees at risk based on medical management. It received payments from the Plan based on its network of participating providers, such that it had a substantial independent financial incentive to under-reimburse out-of-network providers.

37. Plaintiff received an Assignment of Benefits from Patient CB and a Designation of Authorized Representative.  The assignment stated, in pertinent part:

> I hereby assign. . .to [Atlantic Neurosurgical Specialists] to the fullest extent permissible under the law and under any applicable employee group health plan(s). . . any claim, cause of action or other right I may have to such group health plans . . . with respect to medical expenses incurred as a result of the medical services I received from the providers(s) . . . including (iv) to bring any appeal, lawsuit or administrative proceeding, for, and on my behalf.

38. Plaintiff received a Designation of Authorized Representative from Patient CB.  It stated, in relevant part:

> I hereby appoint . . .to the Designated Authorized Representative [Atlantic Neurosurgical Specialists] . . . under ERISA . . . to pursue any rights, claims, or cause of action through litigation or otherwise under any Federal or state law with respect to payment for services provided by a Provider to me, including penalties, interest and attorney fees.

39. ERISA allows a Designated Authorized Representative to bring litigation on behalf of a Plan Participant or Beneficiary of an ERISA Plan.

## The Fiduciary Duties of the Plan Defendant

40. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and beneficiaries like Patient CB.  It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

41. In this case, the Plan Defendant breached its fiduciary duties under ERISA by permitting Aetna to make coverage decisions for spinal surgery for Patient CB, a participant of the Plan, in violation of the Plan's SPD.

## COUNT I

### CLAIM AGAINST DEFENDANT AETNA FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

42. Defendant Aetna is obligated to pay benefits to the Defendant Plan participants and beneficiaries in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA.

43. Defendant Aetna violated its legal obligations under this ERISA-governed Plan when it under-reimbursed Plaintiff for the spinal surgeries provided to Patient CB by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

44. Plaintiff submitted invoices to Defendant Aetna for $98,900.00.

45. Defendant Aetna determined that the Allowed Amount was $29,736.84, leaving an unreimbursed amount of $69,163.16.

46. Plaintiff seeks unpaid benefits and statutory interest back to the dates Plaintiff's claims were originally submitted to Defendant Aetna. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Aetna.

## COUNT II

### CLAIM AGAINST MERCK MEDICAL, DENTAL, LIFE INSURANCE AND LONG TERM DISABILITY PLAN FOR VIOLATION OF ERISA 404 § (A)(1)(B)

47. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), it must discharge its duties solely in the interest of Plan participants and Beneficiaries.

48. The Plan Defendant must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

49. An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity. The Plan Defendant cannot fully delegate its fiduciary responsibilities to administer claims to Aetna and be free of its fiduciary responsibilities under ERISA.

50. As a fiduciary, the Plan Defendant owed Plaintiff a duty of loyalty and the avoidance of self-dealing. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

51. The Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that its claims administrator, Aetna, was reimbursing Plaintiff according to the Plan Defendant's SPD. Instead, Aetna under-reimbursed Plaintiff for two surgeries. These two surgeries were covered under the terms of the SPD.

52. Specifically, the Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that Aetna reimbursed Plaintiff on behalf of its participant according to the Plan Defendant's SPD, which specified that out-of-network providers must be reimbursed according to reasonable and customary charges. The Plan Defendant permitted Aetna to reimburse Plaintiff based on a payment methodology not found in the SPD.

53. The Plan Defendant failed to monitor and correct Aetna's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

54. As a self-funded Plan, the Plan Defendant saved the under-reimbursed amount by allowing its claims administrator to pay Plaintiff in breach of the Plan's SPD, the Plan Defendant's own fiduciary duties, and in violation of ERISA.

55. Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a) Ordering Defendants to recalculate and issue unpaid benefits to Plaintiff;

(b) Ordering declaratory relief, surcharge, profits, and removal of the Plan Defendant for breach of its fiduciary duty and loyalty;

(c) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(d) Awarding prejudgment interest; and

(e) Granting such other and further relief as is just and proper.

Dated: April 6, 2020

/s/ Michael F. Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

                              Attorneys for Plaintiff Atlantic Neurosurgical Specialists, PA, on behalf of Patient CB